IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON LITTLE FRENCH,                     *
                    Plaintiff,
      v.                                 *      CIVIL ACTION NO. CCB-11-2600

ALLEGANY COUNTY, et al.,                 *
                    Defendants.
                                        ***

## MEMORANDUM

Pending are motions to dismiss or, in the alternative, for summary judgment filed on behalf of defendants John Galley, Officer Ickes, Officer Lambert, Officer Mawhinney, Officer Meager, Scott Oakley, Bobby Shearin, Michael Stouffer, Officer Sutherland, Sergeant Thomas, Mary Jane Rose, and Officer Metty (ECF Nos. 16, 33, & 40.), as well as a motion to dismiss filed on behalf of Allegany County. (ECF No. 27.) The plaintiff has responded thereto. (ECF Nos. 43 & 46.) Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

The plaintiff filed a 64-page complaint seeking damages for alleged violations of his right to due process. The plaintiff claims that at several different correctional institutions his property was lost or stolen. He claims that the property was not replaced or he was not properly reimbursed for same. The gravamen of his complaint is that he has been denied access to adequate post-deprivation remedies regarding the lost property. (ECF No. 1.)

Specifically, the plaintiff states that at various times since 2005 his personal property has been lost or damaged by prison personnel. He indicates that he has attempted to file administrative remedy requests regarding the lost property, but there were irregularities in the processing of his remedies and/or he was aggrieved by the decision rendered on his claim. Ultimately, he claims he has been

1

unable to fully pursue his state court claims either because his appeal to the Maryland Circuit Court

was dismissed or because his effort to institute a separate state tort complaint in the Maryland District

Court was dismissed after he was denied permission to proceed *in forma pauperis*. *Id*. The plaintiff

also raises state tort claims regarding the destruction of his property and alleging retaliation. *Id*.

## Standard of Review

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is "to test the

sufficiency of [the plaintiff's] complaint." *Presley v. City of Charlottesville*, 464 F.3d 480, 483

(4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  The Supreme Court has articulated the proper

framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of
> the claim showing that the pleader is entitled to relief in order to give the defendant
> fair notice of what the . . . claim is and the grounds upon which it rests. While a
> complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
> factual allegations, a plaintiff's obligation to provide the grounds of his
> entitle[ment] to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact).

 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations

omitted).  This standard does not require the defendant to establish "beyond doubt" that the plaintiff

can prove no set of facts in support of his claim that would entitle him to relief. *Id.* at 561.  Once a

claim has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint. *Id*. at 563. "Specific facts are not necessary" to meet the requirements of

Rule 8(a)(2); instead, the statement need only "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation

marks and citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that *is plausible on its face*.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief."  *Id.* at 1950 (internal quotation marks and citation omitted).

B.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The Court must also, however, abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from

proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

## Discussion

A.   Statute of Limitations

"Section 1983 provides a federal cause of action, but in several respects . . . federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Maryland the applicable statute of limitations is three years from the date of the occurrence.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The plaintiff's claims arising from the loss of his property in September 2005, September 2006, March 2007, and May 2007 are time-barred and will not be considered.

B.   Sovereign Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless it consents.  *See Penhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.  The plaintiff has improperly named "Allegany County" as a defendant. The plaintiff's complaint makes clear that he intended to name either the Circuit Court for Allegany County or the District Court for Allegany County, both of which are state, not county, entities and thus not amenable to suit under § 1983.  The plaintiff's complaint against Allegany County is therefore subject to dismissal.

C.   Due process

The plaintiff states that on September 16, 2008, staff at the North Branch Correctional Institution ("NBCI") conducted a shakedown search of his cell. (Compl., ECF No. 1, at 41.) Officer Sutherland confiscated the plaintiff's books, papers, and shoes after they were taken for x-ray and told the plaintiff he had too much property.  Sutherland advised the plaintiff that the property would be turned over to the property officer to be reduced to allowable limits and thereafter returned to him.  The plaintiff further states that on October 1, 2008, all of the property that had been taken to be x-rayed was returned to him except one pair of Timberland boots.  During the shakedown of his cell, the plaintiff was taken to another area for a strip search and did not observe what was removed from his cell.  When he returned he observed that much of his property had been removed from his cell, and he objected to Sutherland's designation of some of his property as "trash." (*Id.* at 42.) Sutherland advised the plaintiff that the property thrown out was either in excess of allowable limits or no longer permitted.  The plaintiff states that no confiscation notice was given to him, in violation of Division of Correction ("DOC") policy, and he was unable to tell what property had been destroyed and what property had been taken for x-ray.  On October 1, 2008, he learned that 27 stamps, 4 ink pens, 3 soaps, 2 combs, a prayer towel and a kufi crown had been thrown out. (*Id.* at 43-44.)

Sergeant Sires, Property Room sergeant at NBCI, avers he reviewed NBCI property room records.  Sires found no record regarding the confiscation of the plaintiff's property on September 16, 2008, nor did he find any record that the plaintiff owned a pair of Timberland boots or that a pair of Timberland boots had been confiscated from the plaintiff.  (ECF No. 16, Ex. 2.)

In October 2008, the plaintiff states he filed an administrative remedy procedure ("ARP") grievance for loss of property that he claims prison administration failed to answer. He then filed a grievance to the Inmate Grievance Office ("IGO"), IGO No. 20090155.  The grievance was administratively dismissed on April 7, 2009, without a hearing because the IGO questioned whether

the plaintiff had exhausted internal administrative remedies.  The plaintiff appealed.  The Circuit Court for Allegany County permitted the case to proceed on written briefs but denied oral arguments. On September 28, 2009, the Circuit Court for Allegany County affirmed the decision of the IGO without a memorandum opinion explaining its conclusion.  (ECF No. 1, at 18-19).

On October 10, 2008, the plaintiff states he was taken out of his cell for his recreation hour. (*Id.* at 44.) Inmates in other cells reported to the plaintiff that during that time Officers Metty, Ickes and Lambert entered the plaintiff's cell for a shakedown.  The plaintiff states that when he returned to his cell he found his living area torn "into a disaster area." (*Id.* at 45.)  He noted toothpaste had been squirted all over his clothes and papers thrown everywhere.  Folders of legal files were upended and disorganized.  A boiled egg was stomped on and tracked around the cell floor and onto the plaintiff's belongings.  His washcloth was thrown in his toilet.  Plaintiff discovered that a notebook containing pictures of his deceased parents, 13 stamps, 50 other photos, five softcover pornographic magazines, and one bar of soap were missing.  Plaintiff further alleges that the officers removed all of his bedding. (*Id.* at 46.)

Property Room Sergeant Sires avers that there is no record indicating any of plaintiff's property was confiscated on October 10, 2008. (ECF No. 16, Ex. 2.) During the investigation of the plaintiff's ARP regarding these events, the ARP was dismissed because the officers reported that the only items removed from the plaintiff's cell were a torn state sheet, a torn state blanket, and miscellaneous items of trash. (ECF No. 16).  Additionally, Lambert, Ickes, and Metty aver that they have never engaged in the conduct alleged, nor has anyone done so in their presence.  (ECF No. 16, Ex. 3; ECF No. 40, Ex.1).

The plaintiff instituted ARP NBCI-1231-08, complaining of lost personal property seized by defendants Metty, Lambert, and Ickes.  According to the plaintiff, the grievance was timely denied

and he appealed; however, mail room personnel sent the appeal to the incorrect address.  (ECF No. 1, Ex. 5A & B.  Unaware that the IGO improperly received his grievance on December 16, 2008, and dismissed it on February 2, 2009, the plaintiff filed an external complaint to the IGO on February 1, 2009, believing prison headquarters had failed to respond to the appeal.  (ECF No. 1, Ex. 5B & C.)  The matter was remanded, on request of the state, for hearing before the IGO.  The plaintiff states he obtained a favorable decision with respect to his claim that the officers took his property but was unable to convince the Administrative Law Judge ("ALJ") as to the value of the property.  The plaintiff sought judicial review.  The plaintiff states that he sought an extension of time to file his brief; however, the Allegany County Circuit Court dismissed his case for failing to timely file a brief and denied his request for extension of time in the same order.  (ECF No. 1, Ex. 6; ECF No. 16, Exs. 5 & 6.)

The plaintiff states that he loaned another inmate a legal book and several legal papers and, on October 28, 2008, was attempting to retrieve the materials in a manner which he admits was in violation of prison policy, i.e., by "fishing."[1] (ECF No. 1, at 48.)  The plaintiff states that while attempting to retrieve his property Officer Meager intervened, broke the fishing line, and took the property.  The plaintiff states he attempted to speak with Meager, but Meager responded that the plaintiff's property was trash and he "shouldn't have been fishing." (*Id*. at 49.) Meager then destroyed the property, which consisted of one jailhouse lawyer's handbook and 160-180 pages of legal papers. (*Id*.)

Property Sergeant Sires again avers there is no record of plaintiff's property being confiscated. (ECF No. 16, Ex. 2.)  Meager avers that on October 29, 2008, he observed the plaintiff and another inmate using a string made out of cloth to transfer papers between them in violation of

---

[1] Fishing is defined by the State as a method used by inmates to communicate with one another where they use a line

rules and regulations concerning inmate conduct. (ECF No. 16, Ex. 7.) Meager states that while en route to the area the string broke and the papers were scattered on the tier floor. Meager gathered the papers off the floor and disposed of them. (*Id*.)

In November, 2008, the plaintiff again instituted the prison grievance process concerning the loss of property he maintains was maliciously destroyed by Meager. (ECF No. 1, ARP No. NBCI-1189-08.) The ARP was denied and the plaintiff appealed. The plaintiff then filed a grievance, IGO No. 20090236. After a hearing on the merits, the plaintiff's claim was denied. He appealed but was denied waiver of filing fees. (*Id*., Ex. 4.)

The plaintiff then brought suit in the District Court of Allegany County as to the three claims regarding loss/destruction of property arising in September and October 2008. He was denied a waiver of filing fees on July 15, 2010. (*Id*., Ex. 4A & B.)

On March 14, 2009, the plaintiff was directed to pack his property to be moved to lock up. The plaintiff states he packed his property, which consisted mostly of books and legal papers. The plaintiff states he was separated from his property, which was left in the custody of Officers Metty and Mawhinney to be inventoried, secured and stored. On an unspecified date, the plaintiff's property was returned to him and he noted he was missing property. He states that his "property was so disproportionate to what he had before his property was surrendered on March 14, 2009, that [he] had trouble identifying and expressing to the property officer all he was missing." (ECF No. 1, at 51.) On June 22, 2009, the plaintiff itemized a list of lost property, which included six novels, two religious books, four legal books, criminal case papers, civil case papers, and prison records.

The defendants indicate that there is no record of any of the plaintiff's property being confiscated on March 14, 2009. (ECF No. 16, Ex. 2.) However, Personal Property Inventory Sheet

---

to pass messages or objects between cells. (ECF No. 16, at 3 n. 4.)

and "NBCI Authorized Items for Segregation Inmates" forms for the plaintiff, dated March 30, 2009, indicate the plaintiff's belief that items were missing. (*Id.*, Ex. 10.)  The defendants dispute that the items were "confiscated."  Metty avers that he has no specific recollection regarding these events. (ECF No. 40, Ex. 1.)

In April 2009, the plaintiff states he filed an ARP concerning loss of personal property.  The plaintiff states that prison personnel failed to respond and he noted an appeal and then filed a grievance, IGO No. 20091505.  After a hearing on the merits, the ALJ determined that the plaintiff had lost personal property but had not met the burden of proof regarding ownership or value of the property lost, and declined to award any damages.  The plaintiff sought judicial review; however, the plaintiff claims that the petition, mailed on June 28, 2010, never reached the court.  He states he has had previous problems with prison officials stealing his mail or his mail not reaching its intended destination. (ECF No. 1.)

During his transfer to court from March 16-22, 2010, while in transit, the plaintiff refused to be double-celled. The plaintiff states as he was being "pushed/pulled" along while handcuffed behind his back, his bedroll and legal papers fell out of the crook of his arm in the prison cafeteria.  An unknown officer retrieved the legal paper and bedroll and delivered them to the plaintiff. He then discovered he lost five stamps. (*Id*. at 55.)

In March 2010, the plaintiff filed ARP No. NBCI-0676-20 for loss of property.  His claim was dismissed by prison administration and he appealed. He then filed a grievance to the IGO that the plaintiff states the IGO refused to acknowledge. (*Id*.)  The defendants dispute that the plaintiff filed a complaint with the IGO regarding the lost stamps. (ECF No. 16-1, at 9.)

The plaintiff indicates that from March 2010 to March 2011 he subscribed to Cheri Magazine. He states that he failed to receive the September 2010 and February and March 2011 issues of the

magazine. He "suspects" prison mail of mishandling the magazine because his January issue was sent to a cell that did not house the plaintiff. (ECF No. 1.)

In August 2010, November 2010, and January 2011, the plaintiff initiated the prison grievance process (ARP Nos. NBCI-2512-10, NBCI-3321-10, and NBCI-0233-11) regarding his ongoing problems with his magazine subscriptions. The plaintiff states that prison administration timely responded to each grievance and suggested the plaintiff might be reimbursed by the publisher for the single lost issue of the magazine. The plaintiff noted an appeal contending he lost several issues of the magazines. (*Id.*)

Mail Room Supervisor Joseph Loibel retired from state service on October 1, 2010. (ECF No. 16, Ex. 18.) Mary Ann Rose has been assigned to NBCI's Mail Room since April 30, 2007. Rose avers that all incoming and outgoing mail processed at NBCI is processed in accordance with approved policies and directives. (*Id.*, Exs. 19 & 20.) Rose avers that the plaintiff's mail was not withheld, delayed or not processed by mail room staff so long as the mail was in compliance with applicable rules regarding inmate mail. (*Id.*, Ex. 19.)

The plaintiff states that in May 2010 he brought tort claims in the District Court for Allegany County but was denied a waiver of the filing fee. He alleges this is a violation of his right to due process. The plaintiff states that Allegany County, Scott Oakley, Michael Stouffer and Bobby Shearin have failed to remedy or compensate him for any of the aforementioned lost property. (ECF No. 1.) The defendants maintain that either there is no record of property being confiscated or the plaintiff's claims were dismissed during administrative review of his claims, thereby ending the inquiry. (ECF No. 16.)

The Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams,* 474 U.S. 327, 328

(1986). The failure to follow regulations does not, in and of itself, result in a violation of due process. *See Weller v. Dept. of Social Services*, 901 F.2d 387, 392 (4th Cir. 1990); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). The law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Moreover, an unauthorized intentional deprivation of property by a state employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The defendants correctly note that Maryland has two avenues for post-deprivation remedies. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[2]

Maryland's inmate grievance procedure provides one means of post-deprivation remedy. The IGO is an agency within the Department of Public Safety and Correctional Services that considers the merits of a grievance filed by a prisoner confined in a Maryland Division of Corrections institution or Patuxent Institution. The IGO has established a procedure for processing all grievances filed with it including, but not limited to, grievances involving property. *See* Md. Code Regs. ("COMAR") §§ 12.07.01.01–11. Both a statutory and a regulatory framework govern Maryland's administrative remedy process. Md. Code Ann. Corr. Servs. § 10–204 authorizes the IGO to "adopt regulations governing the conduct of its proceedings," which the IGO has done. *See* Md. Code Regs. ("COMAR") § 12.07.01.01 *et seq.* If, after conducting a preliminary review, the Executive Director decides the grievance should proceed to a hearing, the Executive Director or a designee notifies the grievant and all other individuals determined necessary for the hearing of the date, time, and location

---

[2]Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on *Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

of the hearing, which, to the extent that security considerations permit, is open to the public. *Id.* §

12.07.01.07(A). An administrative law judge (ALJ) of the State Office of Administrative Hearings

(OAH) presides over the hearing. *Id.* Although prehearing discovery procedures do not apply to IGO

proceedings, at a hearing a grievant may (1) be represented by an attorney licensed to practice law in

the State, another inmate, or may appear without representation; (2) call witnesses determined by the

IGO or the presiding ALJ to have competent and relevant testimony that is not unduly cumulative or

repetitive; and (3) present or request the presentation of documents and records determined by the

IGO or the presiding ALJ to be competent and relevant and not unduly repetitious in the

determination of the merits of the grievance. *Id.* § 12.07.01.07(B)-(C). Under Md. Code Ann. Corr.

Servs. § 10–208(d)(3), "[t]he rights of the complainant under this subsection may not be

unreasonably withheld or restricted by the Office of Administrative Hearings or the Inmate Grievance

Office."[3]

      In fact, the plaintiff availed himself of the inmate grievance process and was, on at least two

occasions, successful in securing a ruling in his favor but unsuccessful in demonstrating the amount

of his damages.  The plaintiff argues, however, that his access to this remedy is impaired because of

improper recordkeeping at the prison administrative level and at the IGO. (ECF Nos. 1, 43 & 46.)

He has provided numerous examples of his efforts to properly exhaust his administrative remedies

and of how remedies at the IGO that have been frustrated by lost paperwork. He also notes that on at

least one occasion he has been denied judicial review of the IGO determination because the Circuit

Court for Allegany County refused to grant him indigency status. (*Id.*)  The defendants have failed to

address these concerns.

      The plaintiff also takes issue with the second avenue for post-deprivation remedy.

---

3 *Cf. Phelps v. Anderson,* 700 F.2d 147, 148-49 (4th Cir. 1983) (holding Virginia's inmate grievance procedure,

Maryland's Tort Claims Act waives sovereign immunity for damages up to $200,000 per claimant for causes of action due to negligent or wrongful acts of state employees acting within the scope of employment. Md. Code Ann., State Gov't. § 12-101, *et seq*. The Act requires that prior to instituting an action the claimant must submit a written claim to the Treasurer within one year after the injury that is the basis for the claim. Md. Code Ann., State Gov't § 12-106(b).[4]

The plaintiff has provided evidence of one notice of claim filed pursuant to the Maryland Tort Claim Act. (ECF No. 46, Attach.) The claim is not in regard to the multiple issues raised in this suit. The plaintiff has provided correspondence from the office of the Maryland State Treasurer indicating that a decision by the state would be stayed pending the decision of the IGO and any appeal thereof. *Id*. He therefore points back to the administrative problems he claims are inherent in the administrative remedy process and IGO process as being impediments to his successful use of the Maryland Tort Claim Act. He also alleges numerous impediments to filing a tort claim in the state district courts, including a refusal to grant him indigency status, a reliance on the flawed IGO process in reviewing his claim under the Maryland Tort Claim Act, and procedural bars placed by the state prison litigation act. The defendants have failed to address these claims.

The plaintiff must confront defendants' summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial. This he has done. In short, the plaintiff alleges that the structural defects in the administrative remedy and IGO process, along with the state's refusal to grant him *in forma pauperis* status, demonstrate he has no adequate post-deprivation remedy at state law. Given that state remedies exist, the plaintiff must have a meaningful opportunity to pursue them in order to satisfy due process requirements. In particular, an indigent

---

similar to Maryland's, provides adequate post-deprivation remedy).
[4] *Cf. Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985) (holding Virginia's Tort Claims Act and tort laws, similar to Maryland's, provide an adequate post-deprivation remedy for deprivation of liberty interest).

prisoner ordinarily must enjoy genuine access to a state court for his opportunity to be "meaningful." *See Williams v. St. Louis County*, 812 F.2d 1079, 1083 (8th Cir. 1987); *Frazier v. Collins*, 538 F. Supp. 603, 608 (E.D. Va. 1982).   The defendants have failed to address the plaintiff's allegations that he has been denied meaningful access to the state court remedies.   Genuine disputes of material fact remain concerning the plaintiff's access to post-deprivation remedies for property loss.

D.     Retaliation

The plaintiff further alleges that defendant Metty has been involved in two incidents of malicious destruction of his property motivated by the plaintiff's initial report of Metty being involved in vandalizing and destroying the plaintiff's property in October 10, 2008.   The plaintiff further states that he approached Metty in an effort to recover his property and Metty threatened the plaintiff "that if he kept running his mouth, [he] would get his ass kicked too." (ECF No. 1.)   The plaintiff states that defendant Ickes also threatened to write the plaintiff a bogus rule infraction when he attempted to recover pictures of his deceased parents.   The plaintiff also alleges that he raised issues of "possible retaliation" to defendants Shearin and Stouffer but they refused to "take cognizance of staff threats." (*Id*., Ex. 8D, 8A, 5B.)   The defendants aver that they have never harassed or threatened plaintiff in any way. (ECF No. 16, Exs. 3 & 4.)

While retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983, *see American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993), the plaintiff "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision . . . ." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996).   In order to prevail, the plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right."   *Adams v. Rice*, 40

F.3d 72, 75 (4th Cir. 1994).  "'[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.'" *Gill v. Mooney*, 824 F.2d 192, 194-95 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 943 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).  There is no factual support in the record or complaint that defendants' actions were grounded in retaliatory animus.  Rather, the plaintiff has raised the claim in a conclusory manner and the materials before the court show that the defendants either had neutral, fact-based reasons for their actions or there is nothing to suggest the defendants acted as alleged.  The plaintiff offers nothing in support of his claim other than self-serving conclusory averments.  "In the prison context, we treat [claims of retaliation] with skepticism because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (internal quotation marks and citation omitted).

Further, verbal harassment is not actionable under § 1983. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir. 1998); *accord Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *Partee v. Cook County Sheriff's Office*, 863 F. Supp. 778, 781 (N.D. Ill. 1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" did not give rise to actionable claim for relief under § 1983). The plaintiff's naked assertions that staff used foul language and harassed him do not constitute colorable constitutional claims and are subject to dismissal.

E.     Mail

The plaintiff's claim that on occasion his magazine was not delivered to him fails to the extent it is brought as a claim of mail tampering. *See Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)

(an isolated, inadvertent instance of prison personnel opening incoming confidential legal mail, "'without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation'") (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).

F.      Access to Courts

Similarly, to the extent plaintiff claims that his outgoing mail was not received by its intended beneficiary, thus depriving him of access to the courts, his claim fails.   Prisoners have a constitutionally protected right of access to the courts.   *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. The plaintiff has not shown injury to his ability to challenge his conviction or conditions of confinement.

**Conclusion**

In light of the foregoing, defendant Allegany County's motion to dismiss shall be granted. The correctional defendants' motions to dismiss, or in the alternative motion for summary judgment, shall be granted in part and denied in part. The plaintiff's complaint of retaliation, mail tampering, and access to the courts is denied. The plaintiff's complaint of a due process violation due to inadequate post-deprivation remedies shall proceed.

A separate order follows.


September 18, 2012               _____/s/_____
Date                            Catherine C. Blake
                                United States District Judge