IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON LITTLE FRENCH        *

       v.        *     CIVIL ACTION NO. CCB-11-2600

ALLEGANY COUNTY, et al.       *

       ***

## MEMORANDUM

Pending is the motion to dismiss or for summary judgment filed by defendants Jon Galley, Officer Ickes, Officer Lambert, Officer Mawhinney, Officer Meager, Officer Metty, Scott Oakley, Mary Jane Rose, Bobby Shearin, Michael Stouffer, Officer Sutherland, and Sergeant Thomas (ECF No. 51), and plaintiff's response thereto. ECF No. 61. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter is not necessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

As previously recounted by the court in its memorandum opinion of September 18, 2012:

> The plaintiff filed a 64-page complaint seeking damages for alleged violations of his right to due process. The plaintiff claims that at several different correctional institutions his property was lost or stolen. He claims that the property was not replaced or he was not properly reimbursed for same. The gravamen of his complaint is that he has been denied access to adequate post-deprivation remedies regarding the lost property. (ECF No. 1.)

> Specifically, plaintiff states that at various times since 2005 his personal property has been lost or damaged by prison personnel. He indicates that he has attempted to file administrative remedy requests regarding the lost property, but there were irregularities in the processing of his remedies and/or he was aggrieved by the decision rendered on his claim. Ultimately, he claims he has been unable to fully pursue his state court claims either because his appeal to the Maryland Circuit Court was dismissed or because his effort to institute a separate state tort complaint in the Maryland District Court was dismissed after he was denied permission to proceed *in forma pauperis*. *Id.* The plaintiff also raises state tort claims regarding the destruction of his property and alleging retaliation. *Id.*

*French v. Allegany County*, 2012 WL 4324901, *1 (D. Md. Sept. 18, 2012).

The court previously granted defendants' dispositive motions regarding plaintiff's claims of access to the courts, retaliation, and lost mail, and directed defendants to respond to plaintiff's claims regarding denial of due process arising after September of 2008. ECF Nos. 47 & 48. This they have done. ECF No. 51.

## Standard of Review

A.    Motion to Dismiss

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted).

"Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

B.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**Discussion**

The full facts underlying the plaintiff's due process claim have been discussed previously. *French v. Allegany County*, 2012 WL 4324901, *3-6 (D. Md. Sept. 18, 2012). Defendants have supplemented the record to indicate that no property confiscation records were found regarding confiscation of plaintiff's property on September 16, October 10 and 29, 2008, and March 14, 2009. Defendants aver that no records were created because plaintiff's property was not confiscated as alleged. Sergeant Sires asserts he has no knowledge that any of plaintiff's property was inventoried, confiscated, lost or misplaced on any of the dates as alleged by plaintiff. Sires further explains that inventories are conducted for segregation inmates upon their arrival on the segregation unit and again when the inmate is removed from segregation and returned to general population. ECF No. 51, Ex. 1.

Sergeant Thomas avers that he is assigned to the Audit Compliance Office at NBCI. *Id*., Ex. 2. Audits are conducted twice a year regarding record keeping, and institutional performance audits of NBCI's staff and departments are also conducted, at a minimum, bi-annually. "Internal Audits" are those conducted by other staff from other Maryland correctional institutions. "Headquarter Audits" are conducted by Department of Public Safety and Correctional Services (DPSCS) headquarters. Further audits are conducted by the Commission on Correctional Standards, which involves agencies independent of DPSCS. *Id*. Audits have been conducted at NBCI since November 2008 and the Administrative Remedy Process Office is included in the audits. Any discrepancies or recommendations noted by the audit team are reviewed by DPSCS, and corrections, if needed, are made. *Id*.

Sergeant Zais avers that he is the ARP Coordinator at NBCI, *id.*, Ex. 3, and that all ARPs filed by plaintiff have been acknowledged and processed. Zais further avers that since April of 2007, NBCI's ARP Office has received and processed 132 ARPs from plaintiff. *Id*., Exs. 3 & 4.

Zais states that to his knowledge none of plaintiff's ARPs were withheld, delayed, or not processed when the ARPs were filed in compliance with approved policies and directives. *Id*. DPSCS directives require that the inmate be given a copy of the ARP stamped with an "embossed seal" when he submits an ARP. The ARP is then forwarded by staff to the NBCI ARP office, where it is date-stamped by the ARP office staff and assigned an institutional processing number. The inmate is then provided a receipt indicating the ARP was received and is being processed. Zais further avers that NBCI's ARP office is audited by the internal audit process, DPSCS headquarters, and the Commission on Correctional Standards. *Id*., Ex. 3.

Executive Director of the Inmate Grievance Office, Scott S. Oakley, explains that inmates have two avenues of written communication with the IGO. *Id*., Ex. 5. They may send their mail to the IGO through the U.S. Postal Service or they may send their mail to the IGO through the DPSCS courier system. The IGO receives mail from inmates via both systems daily, except for Saturdays, Sundays, and legal holidays. Mail received via either method is processed by IGO clerical staff and date-stamped with the date the mail was actually received by the IGO. The mail is then reviewed by IGO staff to determine whether it pertains to an existing numbered grievance previously filed with the IGO by that inmate, is a new complaint not previously filed by that inmate with the IGO, or is something other than an IGO complaint, i.e. a Maryland Public Information Act request for records. If the mail pertains to an existing grievance, it will be placed by staff in the file for that numbered grievance and a docket entry for that item will be made in the IGO's computerized Case Tracking database. If the item is a new complaint, staff will place it in a new numbered grievance file and make a docket entry for that item of mail in the file and on the IGO's computerized Case Tracking database. If the item does not pertain to an IGO grievance the staff will place it in a subject matter file such as "Maryland Public Information Act." Oakley avers that no item of mail is discarded by the

IGO except in accordance with the records management, retention, and disposition requirements of Md. Code Ann. State Gov't §§ 10-631, *et seq. Id.*, Ex. 5.

Following initial sorting and docketing of the mail each item is reviewed by a member of the IGO administrative staff, i.e. the Executive Director, Deputy Director, Associate Director, or Administrative Officer. Each item pertaining to an inmate grievance is reviewed by IGO administrative staff acting in a quasi-judicial capacity. While admitting that items of mail may, on occasion, be initially misidentified and/or misfiled by clerical staff, Oakley avers that the error is usually quickly discovered and rectified by administrative staff upon subsequent review. *Id.*

If an inmate claims to have sent an item of mail to the IGO regarding a grievance, IGO staff routinely review IGO records pertinent to the time period to determine if the IGO received the item of mail. If the item cannot be found, Oakley asserts that staff can "confidently conclude that the IGO did not receive that item of mail." *Id.*

Defendants further offer that plaintiff was received into DOC custody on March 2, 2004. *Id.*, Ex. 6. From January of 2008 to September 18, 2012, plaintiff filed 29 state court matters in the Circuit Court for Allegany County, including 24 administrative agency appeals, a petition for writ of certiorari, and 4 other civil cases. *Id.*, Ex. 7. As of December 28, 2012, plaintiff has filed a total of 80 cases in Maryland's state courts. *Id.*, Ex. 8.

The Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *See Daniels v. Williams,* 474 U.S. 327, 328 (1986). The failure to follow regulations does not, in and of itself, result in a violation of due process. *See Weller v. Dept. of Social Services,* 901 F.2d 387, 392 (4th Cir. 1990); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). The law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Klevenhagen*, 97

F.3d 91, 94 (5th Cir. 1996). Moreover, an unauthorized intentional deprivation of property by a state employee does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Defendants correctly note that Maryland provides two avenues for post-deprivation remedies. S*ee Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[1]

Maryland's inmate grievance procedure provides one means of post-deprivation remedy. The IGO, an agency within the Department of Public Safety and Correctional Services, considers the merits of a grievance filed by a prisoner confined in a Maryland Division of Correction institution or Patuxent Institution. The IGO has established a procedure for processing all grievances filed with it, including, but not limited to, grievances involving property. *See* Md. Code Regs. ("COMAR") 12.07.01.01-11. Both a statutory and a regulatory framework govern Maryland's administrative remedy process. Md. Code Ann. Corr. Servs. § 10-204 authorizes the IGO to "adopt regulations governing the conduct of its proceedings," which the IGO has done. *See* Md. Code Regs. ("COMAR") 12.07.01.01 *et seq.* If, after conducting a preliminary review, the Executive Director decides the grievance should proceed to a hearing, the Executive Director or a designee notifies the grievant and all other individuals determined necessary for the hearing of the date, time, and location of the hearing, which, to the extent that security considerations permit, is open to the public. *Id.* at 12.07.01.07(A). An administrative law judge (ALJ) of the State Office of Administrative Hearings (OAH) presides over the hearing. *Id.* Although prehearing discovery procedures do not apply to IGO proceedings, at a hearing a grievant may (1) be represented by an attorney licensed to practice law in

---

[1] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on *Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

the state, or another inmate, or appear without representation; (2) call witnesses determined by the IGO or the presiding ALJ to have competent and relevant testimony that is not unduly cumulative or repetitive; and (3) present or request the presentation of documents and records determined by the IGO or the presiding ALJ to be competent and relevant and not unduly repetitious in the determination of the merits of the grievance. *Id.* at 12.07.01.07(B)-(C). Under Md. Code Ann. Corr. Servs. § 10-208(d)(3), "[t]he rights of the complainant under this subsection may not be unreasonably withheld or restricted by the Office of Administrative Hearings or the Inmate Grievance Office."[2]

Plaintiff availed himself of the inmate grievance process. On at least two occasions he succeeded in securing a ruling in his favor but was unsuccessful in demonstrating the amount of his damages. Plaintiff argues, however, that his access to this remedy is impaired because of improper record keeping at the prison administrative level and at the IGO. *See* ECF Nos. 1, 43 & 46. He has provided examples of his efforts to properly exhaust his administrative and IGO remedies, which have been frustrated by his claims of lost paperwork. Defendants have now responded indicating the procedures in place for insuring that all properly filed administrative remedies and grievances filed with the IGO are properly processed. Defendants indicate that all ARPs submitted are initially stamped with a raised seal and that paper is returned to the inmate. When the ARP is received by the ARP coordinator a number is generated and a date stamped copy of the ARP is returned to the inmate. In this way, with receipt of the "sealed" ARP, the inmate can properly track his ARP and if he does not receive a date stamped copy in a timely fashion, for whatever reason, he may resubmit the ARP.

In terms of the IGO procedure, all mail received by the IGO which pertains to a grievance is logged in manually and also docketed in the computer tracking system. Items not pertaining to a

---

[2] *Cf. Phelps v. Anderson,* 700 F.2d 147, 149 (4th Cir. 1983) (holding Virginia's inmate grievance procedure, which is similar to Maryland's, provides adequate post-deprivation remedy).

grievance are filed in subject folders. Any errors in filing mail by clerical staff are uncovered by administrative staff during the processing of files. Both systems are routinely audited. Defendants have demonstrated adequate procedural protections are in place to insure that ARPs and IGO grievances are properly logged and processed.

While the long standing rule has been that prisoners have no constitutional right to participate in an institutional grievance procedure, *see Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), with the passage of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the issue is less clear. The PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner. *Id.* The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further clarification regarding exhaustion as a pleading requirement was announced by the Fourth Circuit in *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674 (4th Cir. 2005), wherein the court held, "an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant." *Id.* at 681. A plaintiff may rebut the affirmative defense, however, as "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause because it does not bar consideration of plaintiff's claim in this court. Assuming, *arguendo*, that defendants did not satisfactorily investigate or respond to plaintiff's remedy requests, plaintiff's claim fails because he has not alleged, much less demonstrated,

any injury as a result of the alleged failure to investigate ARPs.

As noted herein, the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels,* 474 U.S. at 328. Absent intentional and deliberate conduct by prison staff there is no denial of due process. *See Pink v. Lester*, 52 F.3d 73, 74-75 (4th Cir. 1995) (unintended misrouting of a money order request was too far afield from state action "used for purposes of oppression" to constitute a violation of the Due Process Clause.) Under the facts presented here, any loss of paperwork cannot be attributed to intentional misconduct or systemic deficiencies.

Similarly, plaintiff's claim that on at least one occasion he has been denied judicial review of the IGO determination because the Circuit Court for Allegany County refused to grant him indigency status cannot proceed because plaintiff has failed to demonstrate that on that occasion he was entitled to indigency status. *See* ECF No. 51, Ex. 9 (inmate account statement). A Maryland prisoner may obtain a waiver of the filing fee in state court by demonstrating that: (1) he is indigent; (2) the issue presented is of serious concern; (3) the delay in considering the issues presented will prejudice the consideration of the claim; (4) the prisoner is not likely to accumulate sufficient funds to pay the required filing fee within a reasonable time; and (5) the prisoner possesses a reasonable likelihood of success on the merits. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-1002(c)(1)-(5). The prisoner demonstrates the foregoing in a "written showing under oath." *Id.*, § 5-1002(c). The denial of plaintiff's indigency application does not demonstrate he has been denied access to the courts. Moreover, none of the named defendants has any responsibility for determining indigency status.

Plaintiff also takes issue with the second avenue for post-deprivation remedy. Maryland's Tort Claims Act waives sovereign immunity for damages up to $200,000 per claimant due to negligent or wrongful acts of state employees acting within the scope of employment. *See* Md. Code

Ann., State Gov't. §§ 12-101, *et seq.* The Act requires that prior to instituting an action the claimant must submit a written claim to the Treasurer within one year after the injury that is the basis for the claim. Md. Code Ann., State Gov't § 12-106(b).[3]

Plaintiff has provided evidence of one notice of claim filed pursuant to the Maryland Tort Claims Act. ECF No. 46, Attachment. It is to be noted that the claim is unrelated to the many claims raised in this suit. Plaintiff has provided correspondence from the Maryland State Treasurer indicating that a decision by the state would be stayed pending the decision of the IGO and any appeal therefrom. *Id.* He points back to the administrative problems he alleges, but fails to demonstrate the problems are inherent in the administrative grievance process and impede his successful use of the Maryland Tort Claims Act. Defendants have refuted any such systemic defects and plaintiff's own allegations fail to support this claim.

Plaintiff's allegations that structural defects in the administrative remedy and IGO process, along with the state's refusal to grant him *in forma pauperis* status, demonstrate he has no adequate post-deprivation remedy at state law have been refuted by defendants. The record before the court demonstrates that plaintiff has enjoyed meaningful access to state remedies. *See Frazier v. Collins*, 538 F. Supp. 603, 608 (E.D. Va. 1982). Principally, he has been provided access to administrative remedies, on several occasions prevailing before the IGO. One hundred and thirty-two administrative remedy requests have been processed for plaintiff at NBCI since April of 2007. An occasional lost or misfiled paper does not meet the level of a due process violation.

Further, the record demonstrates that plaintiff has filed 24 administrative appeals from January of 2008 to September of 2012, and instituted over 80 cases in state court during his incarceration.

---

[3] *Cf. Wadhams v. Procunier,* 772 F.2d 75, 77-78 (4th Cir. 1985) (holding Virginia's Tort Claims Act and tort laws, which are similar to Maryland's, provide an adequate post-deprivation remedy for deprivation of liberty interest).

Plaintiff has failed to demonstrate that he has been denied meaningful access to either the administrative remedy process or to state courts. To the contrary, defendants have demonstrated that not only are systems in place to insure inmates' access, but those processes are regularly audited and corrective action is taken when needed. Defendants have demonstrated that plaintiff has had ample access to his administrative remedies and state court proceedings.[4] Any denial of indigency status by the state courts rests with plaintiff's inability to meet the state burden for granting same, not with the named defendants.

In light of the foregoing, the correctional defendants' motions to dismiss, or in the alternative motion for summary judgment, shall be granted. A separate order follows.


<u>August 8, 2013</u>                              _____/s/_____
Date                                                    Catherine C. Blake
                                                        United States District Judge

---

[4] Plaintiff's own pleadings make this point. Plaintiff grieved the alleged loss of property occurring on September 26, 2008, to the Circuit Court for Allegany County, which denied the appeal on the written briefs. Plaintiff prevailed on his claim regarding lost property arising on October 10, 2008, and March 14, 2009 before the ALJ, but was unable to prove damages. His appeal to the Circuit Court regarding the October 10, 2008, incident was dismissed due to plaintiff's failure to file a timely brief. Plaintiff's grievance regarding the October 29, 2008, confiscation was investigated at the ARP and IGO levels and denied. Plaintiff was then denied a waiver of filing fees at the Circuit Court level. The IGO disputes having received plaintiff's grievance regarding the March 2010 loss of five stamps. There is no evidence that plaintiff sought to pursue this issue in any other manner.